# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM L. BURRELL, JR., | : | |
| Plaintiff, | : | CIVIL ACTION NO. 3:12-2504 |
| v. | : | (JUDGE MANNION) |
| DANIELLE ROSS, ET AL., | : | |
| Defendants | : | |

## MEMORANDUM

Presently before the court is plaintiff William Burrell Jr.'s complaint seeking various remedies for constitutional violations allegedly committed by Lackawanna County, several of its Court of Common Pleas judges, and Danielle Ross, *guardian ad litem* in a child custody case involving plaintiff's son and step-daughter. (Doc. No. 1.) Specifically, plaintiff alleges claims under the Fourth Amendment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, the Pennsylvania Constitution, and various state laws. (Doc. No. 1, at 23-26.) Because plaintiff is proceeding *in forma pauperis*, (Doc. No. 3), the court is giving his complaint preliminary consideration pursuant to 28 U.S.C. §1915(e)(2)(B). After conducting a preliminary review, the court has determined that plaintiff's complaint "fails to state a claim for which relief can be granted." Id. Because it is possible that some of these errors may be corrected, the court will **GRANT** plaintiff **LEAVE**

**TO AMEND** his complaint but will **DISMISS** his claims against Judge Corbett, Judge Harhut, and Judge Munley **WITH PREJUDICE**.

**BACKGROUND**

This case arises out of a series of child custody hearings in which plaintiff sought amendment of an agreement governing his legal rights to custody and visitation of his step-daughter and biological son. (Doc. No. 1.) In 2012, plaintiff agreed to a court order allowing his step-daughter to live with her biological father but giving plaintiff visitation during the summer. (Doc. No. 1, at 5.) Plaintiff claims that in May of 2012, "the biological mother enlisted the help of the biological father of plaintiff's step daughter to help her get custody of plaintiff's biological son and the two began denying plaintiff his rights under the two court orders." (Doc. No. 1, at 5.)

In response, plaintiff filed a motion for contempt and a motion to modify the family court order. (Doc. No. 1, at 5.) Although the precise timeline is unclear, plaintiff explains that defendant Ross was appointed *guardian ad litem* in his case soon after plaintiff's complaint was filed. (Doc. No. 1, at 6.) The case was scheduled for a hearing on June 1 and June 29, but, because of a miscommunication, plaintiff missed the first hearing date. (Doc. No. 1, at

2

6.) Defendant claims that the hearing date was subsequently moved six times, despite plaintiff's objections, each time because defendant Ross requested continuances. (Doc. No. 1, at 6, 22.)

On the date of the first hearing, plaintiff claims Judge Corbett decided that the case required a *guardian ad litem* despite plaintiff's objections to the contrary. (Doc. No. 1, at 7.) Several days later, the parties met for the contempt and modification hearing. (Doc. No. 1, at 7.) Plaintiff claims that Judge Corbett went off the record to "castigate and demoralize" him, (Doc. No. 1, at 7), and she stated that she was inclined to deny plaintiff's motions because he had not served the other parties with a copy of a court order, another order stating that he attended a pretrial conference, and a third order stating that he attended a master's hearing. (Doc. No. 1, at 7.) Judge Corbett also explained that she was inclined to dismiss the case in its entirety because plaintiff had not served the biological father with a copy of the clerk's order.[1] (Doc. No. 1, at 10.) Judge Corbett also allegedly "expressed shock and clear doubts that [plaintiff] would ever get sole custody, repeating that [plaintiff's] chances were extremely unlikely for sole custody." (Doc. No. 1, at 7.)

---

[1]Plaintiff does not specify what order he is referring to.

Plaintiff claims that Judge Corbett's treatment of him at the hearings was motivated by indignation that plaintiff would exercise his First Amendment rights by seeking the dismissal of defendant Ross as *guardian ad litem*. (Doc. No. 1, at 8.) Plaintiff further claims that Judge Corbett refused to read his brief and accused him of practicing law by drafting a custody agreement with his step-daughter's biological father. (Doc. No. 1, at 10.) Plaintiff claims that she refused to hear the merits of the case and instead told the parties to work out an agreement while the court took a recess. (Doc. No. 1, at 11.) According to plaintiff, the other parties proposed a custody order modification and, despite plaintiff's refusal to accept the new terms, Judge Corbett went on the record and modified the order as proposed by the other parties, despite plaintiff's protests. (Doc. No. 1, at 11.)

Being discontent with Judge Corbett's decision and upset over her remarks at the hearing, plaintiff filed a motion for recusal against the Judge. (Doc. No. 1, at 11.) Plaintiff claims Judge Corbett retaliated against him for filing this motion by conspiring with defendant Ross to delay his next hearing date so that Ross would have time to gather damaging information about him. (Doc. No. 1, at 11-12.) In order to shield Ms. Ross and herself from liability, plaintiff claims that Judge Corbett used her judicial powers to issue formal

4

court orders, thus granting them immunity for their unconstitutional actions. Plaintiff claims that the repeated delays in his case and Judge Corbett's statements in court "demonstrate a clear showing of due process violations, 1st amendment violations, section 1985 violations, and denial of family relations." (Doc. No. 1, at 13.) He also claims that Ross's priority as *guardian ad litem* was generating revenue, not representing "minor children before the court when necessary in extraordinary circumstances." (Doc. No. 1, at 16.) According to plaintiff, Ross is the only *guardian ad litem* in the county and is appointed to "virtually all custody proceedings." (Doc. No. 1, at 15.) Therefore, plaintiff claims that the *guardian ad litem* system in Lackawanna County is overburdened and short-staffed, thereby denying him "due process and familial relations." (Doc. No. 1, at 12.)

Plaintiff further alleges that defendant Ross repeatedly attempted to interview him even though she had already met with him and questioned him extensively on other occasions. (Doc. No. 1, at 14.) On one occasion, Ross "forced [plaintiff] to comply with an in home inspection," even though she did not conduct a similar inspection of the other parties' houses. (Doc. No. 1, at 15.) Ross also "demanded from plaintiff his email provider and any screen names" and "subjected [plaintiff] to illegal wiretap surveillance of his e-mails

5

and even facebook page." (Doc. No. 1, at 15.) Plaintiff claims he was forced to comply with the inspections because he "was given the impression that it would reflect poorly if plaintiff didn't comply." (Doc. No. 1, at 15.) He claims that Ross's home inspection and surveillance violated his Fourth Amendment rights.

## **STANDARD OF REVIEW**

When conducting a preliminary review, the court must liberally construe the complaint, "however inartfully pleaded," and the allegations are to be held to a "less stringent standard[] than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). In doing so, the court is to "apply the applicable law irrespective of whether a *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 687 (3d Cir. 2002). Nevertheless, "a court need not credit a complaint's bald assertions or legal conclusions." Morse v. Lower Merion Sch. Dist. 132 F.3d 902, 906 (3d Cir. 1997).

Plaintiff brings his constitutional claims pursuant to 42 U.S.C. §1983. Section 1983 does not provide a substantive right, but instead a remedy for violation of other constitutional rights. Gonzaga Univ. v. Does, 536 U.S. 273 (2002). The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . 42 U.S.C. §1983.

To establish a claim under §1983, a plaintiff must prove that the defendants deprived him of a constitutional right while acting under the color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

## **DISCUSSION**

In his complaint, Plaintiff alleges that his constitutional rights were violated by his stepson's *guardian ad litem*, several Lackawanna County judges involved in his child custody case, and Lackawanna County itself. Because plaintiff is proceeding *in forma pauperis*, the court must conduct a preliminary review of the complaint. Jennette v. Holsey, 06-CV-874, 2006 WL 1984734, *1 (M.D.Pa. 2006). In light of the following, the court has determined that several of plaintiff's claims fail to state a claim for which relief can be granted. Therefore, the court will **GRANT** him one opportunity to **AMEND** his complaint but **DISMISS** his claims against Judges Corbett, Harhut, and Munley **WITH PREJUDICE**.

**A. Lackawanna County Judges and Judicial Immunity**

Plaintiff seeks damages, declaratory judgment, and injunctive relief against Judge Harhut and Judge Munley in their official capacities and Judge Corbett in her official and individual capacity. Plaintiff claims Judge Corbett conspired with defendant Ross, the *guardian ad litem*, to alter plaintiff's custody agreement and terminate his legal rights concerning his stepdaughter. Finally, he claims Judge Corbett liberally granted continuances to give defendant Ross more time to gather damaging information about plaintiff, (Doc. No. 1, at 12, 13), and intentionally shielded herself with judicial immunity so that she would be protected from the consequences of her allegedly unconstitutional actions. (Doc. No. 1, at 13.) As for defendants Harhut and Munley, plaintiff claims that they were involved in creating and maintaining the allegedly unconstitutional *guardian ad litem* system in Lackawanna County. (Doc. No. 1, at 19.)

As a preliminary matter, the court will dismiss plaintiff's claims against Judge Harhut and Judge Munley with prejudice because he only brought claims against them in their official capacity, and "official capacity suits are really against the governmental entity that employs the individuals." Kohn v. School Dist. of City of Harrisburg, 817 F.Supp.2d 487, 510 (M.D.Pa. 2011) .

As such, to the extent that a party brings both municipal claims and official capacity claims, the official capacity claims are redundant. Id. Here, plaintiff makes a claim against both Lackawanna County itself and Judge Harhut and Judge Munley in their official capacity; therefore, plaintiff's claims against Judge Harhut and Judge Munley are redundant and will be **DISMISSED WITH PREJUDICE**. Furthermore, the court will **DISMISS WITH PREJUDICE** plaintiff's official capacity suit against Judge Corbett for the same reason. The court will now consider plaintiff's claim against Judge Corbett in her individual capacity.

It is well settled that "judicial immunity provides that judges are immune from suit for their judicial acts so long as the judicial acts are not in the clear absence of jurisdiction." [Wallace v. Powell, 09-CV-286, 2009 WL 4051974, *4 (M.D.Pa. 2009)](). Furthermore, injunctive relief may only be granted against a judge if "a declaratory decree was violated or declaratory relief was unavailable." [42 U.S.C. §1983]() (barring injunctive relief against judicial officers for act or omission in judicial capacity unless declaratory decree was violated or declaratory relief was unavailable); see also [Azubuko v. Royal, 443 F.3d 302, 303-04 (3d Cir. 2006)]() (barring injunctive relief against state judge for failure to show declaratory relief unavailable or decree violated). Of course,

9

judicial immunity does not apply if the judge "has acted in the clear absence of all jurisdiction." Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 769 (3d Cir. 2000). On the other hand, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." Id.

Judicial immunity forecloses Plaintiff's claims for monetary relief in this case. All plaintiff's allegations against Judge Corbett demonstrate that she was acting in her judicial capacity when she committed the alleged constitutional violations. In fact, plaintiff admits as much when he states, "[i]n an attempt to shield herself and Ross from liability via immunity, defendant Corbett used her judicial powers to issue formal court orders." (Doc. No. 1, at 13.) A judge's motive is irrelevant in determining the application of immunity,(Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 769 (3d Cir. 2000)), and plaintiff admits that Judge Corbett acted through formal court orders, thereby bringing her within the protections of judicial immunity. Because plaintiff admits that Judge Corbett acted within the scope of her judicial capacity, the court will **DISMISS** plaintiff's claim for monetary damages against Judge Corbett **WITH PREJUDICE**.

As for declaratory relief, §1983 permits such a remedy, but plaintiff has

10

failed to demonstrate that it is appropriate here. The decision to grant declaratory relief rests with the sound discretion of the trial court. Breane C. v. Southern York County School Dist., 08-CV-1526, 2008 WL 8667663, *2 (M.D.Pa. 2008). The Third Circuit has made a distinction between declaratory relief "in the true legal sense" and declaratory relief intended "solely to adjudicate past conduct." Corliss v. O'Brien, 200 Fed.Appx. 80, 84-85 (3d Cir. 2006). The latter is "meant simply to proclaim that one party is liable to another," and, therefore, declaratory relief is inappropriate Id. Here, plaintiff asks the court to adjudicate several constitutional claims, both state and federal, and a state statutory claim. (Doc. No. 1, at 23-25.) Plaintiff explains:

> The declaratory relief is: (a) to declare the continued delays of plaintiff's hearings unconstitutional; and (b) to declare that biased statements of defendant Corbett pose an imminent threat to plaintiff's due process rights to a fair and impartial hearing; and (c) to have the GAL System as it previously existed at the time this matter arose and as currently exists and implemented, declared unlawful and unconstitutional; and (d) to have all defendant's continued involvement in Plaintiff's life and the life of Plaintiff's minor son declared unlawful and unconstitutional. (Doc. No. 1, at 2.)

These claims simply ask the court to declare past action unconstitutional retroactively, which basically amounts to declaring one party liable to another, so declaratory judgment is not appropriate here.

Finally, plaintiff asks the court to grant him injunctive relief. (Doc. No. 1,

at 2.) "It is well-established that injunctive relief is extraordinary in nature and should issue only in limited circumstances." Athens Healthcare, Inc. v. Sebelius, 13-CV-1443, 2013 WL 2403578, *5 (M.D.Pa. 2013). Furthermore, "whether injunctive relief is granted is at the sound discretion of the trial judge." Id. In determining whether to grant injunctive relief, the court must consider:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest. Id.

Plaintiff's asks the court to issue an injunction prohibiting defendants from having further contact with plaintiff's case and disbanding the county's *guardian ad litem* system. (Doc. No. 1, at 1-2.) In requesting injunctive relief, plaintiff fails to address any one of the four factors. Furthermore, after a meticulous review of the complaint, the court has determined that plaintiff cannot establish irreparable harm. Plaintiff may appeal the trial court's decision, in which case he could conceivably request monetary damages or modification of the custody agreement. As such, injunctive relief is inappropriate here. Therefore, plaintiff's claims against Judge Corbett for declaratory judgment and injunctive relief will be **DISMISSED WITH**

**PREJUDICE** for failure to state a claim upon which relief can be granted.

### B. *Guardian Ad Litem* and Quasi-Judicial Immunity

Plaintiff next alleges that defendant Ross "conspired to delay plaintiff's next hearing dates to punish and reprimand [him]," overloaded her case schedule so that plaintiff was not provided adequate due process, and forced plaintiff to comply with a home inspection and wiretap in violation of the Fourth Amendment. (Doc. No. 1, at 12, 13, 15.) The problem with Plaintiffs claim against Ms. Ross is that he fails to address quasi-judicial immunity's application to her actions under these facts.

As a preliminary matter, plaintiff alleges a claim against defendant Ross in her official capacity. However, because official capacity suits really allege claims against the municipality itself, (See supra, at 5), the court will dismiss plaintiff's official capacity suit as redundant of his municipal claims.

A *guardian ad litem* is "appointed by the court in custody proceedings to serve as an investigator or gather information about the parents and the children and report back to the court recommending which parent should receive custody." Hughes v. Long, 242 F.3d 121, 127 (3d Cir. 2001). Because guardians perform court-delegated responsibilities, they are entitled to absolute judicial immunity if they are acting as an "actual functionary or arm

of the court." Id. (quoting Gardner, 874 F.2d at 146).

Plaintiff's complaint indicates that Ms. Ross acted pursuant to the court's directives at all relevant times. He alleges Ms. Ross was appointed *guardian ad litem* by Judge Corbett on June 18. (Doc. No. 1, at 7.) Plaintiff states, "Ross was appointed, pursuant to court orders and in accordance with the aforesaid GAL System." (Doc. No. 1, at 16.) He explains that Ms. Ross "acted with the acquiescence and support of the Judges, the CCP and/or the County." (Doc. No. 1, at 16.) Nowhere in his complaint does Plaintiff allege Ms. Ross was acting beyond the scope of her court-delegated responsibilities. Because it is possible that this error may be corrected, the court will grant plaintiff one opportunity to amend his complaint in order to plead facts indicating that Ms. Ross is not entitled to immunity.

**C. Municipal Liability Under §1983**

Finally, Plaintiff claims Lackawanna County itself violated his constitutional rights by operating and maintaining an unconstitutional *guardian ad litem* system. (Doc. No. 1, at 15.) To set forth an adequate §1983 claim, "a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." 42 U.S.C. §1983; Kaucher v. County of Bucks, 455 F.3d 418,

423 (3d Cir. 2006). Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . 28 U.S.C. §1983.

A municipality is a "person" for purposes of §1983, but courts have declined to find municipal liability under a theory of respondeat superior. Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 689 (1978)). A municipality is not liable under §1983 merely for employing someone who violates a person's civil rights, only where it has in place a policy or custom that led to the violation. Id. Policy and custom have been defined as follows:

> Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law. Custom may also be established by evidence of knowledge and acquiescence. Mulholland v. Government County of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013).

15

In his complaint, plaintiff alleges:

The noncompliance with Pennsylvania law[2] on the part of the Lackawanna County Family Courts, all defendants in this action, as alleged in the media, in the Stefanov lawsuit, and as pointed out by the 51 recommendations by the AOPC[3], clearly indicate that such non compliance was routine, and in light of that routine noncompliance, it can be ascribed to municipal decision makers and amounts to policy.

Plaintiff cites the media, a lawsuit called the "Stefanov lawsuit," and recommendations of the AOPC to establish a custom or policy. Plaintiff does not reproduce any facts from those sources in his complaint, and the only citation that plaintiff provides points to the recommendations of the AOPC, a webpage for which plaintiff has provided an invalid URL.[4] The court is unable to find any factual allegations in the complaint going to the issue of policy or custom, and the only allegation that remotely hints at policy or custom is plaintiff's statement, "such compliance was routine." (Doc. No. 1, at 15.) To the extent that plaintiff is using the word routine as a synonym for the words

---

[2]The court assumes that plaintiff means federal law because §1983 provides no remedy for violation of state law.

[3]Administrative Office of the Pennsylvania Courts

[4]The URL that plaintiff provides in the complaint is http://www.pacourts.us/NR/rdonlyres/27A05787-5AA8-42AC-B5A1-124A76BFD78C/0/GuarAdLit_070512.pdf.

16

custom, it amounts to a legal conclusion to which the court is not required to afford a presumption of truth. Gula v. Advanced Cargo Transp. Inc., 13-CV-226, 2013 WL 1899900, *3 (M.D.Pa. 2013). To the extent plaintiff is using the word as a factual allegation to describe whether the noncompliance amounted to custom, the court considers the word "routine" too imprecise to determine whether the conduct amounts to custom. Without facts underlying the conclusion that the noncompliance was routine, the court is unable to determine whether plaintiff has stated a plausible claim for relief under *Monell*.

Plaintiff also attempts to argue city policymakers had knowledge of the *guardian ad litem* system, and therefore it amounted to custom. (Doc. No. 1, at 15.) He states, "[t]he county knew of the court's GAL practices in general and of Ross's actions specifically. It knew that Ross was to be (and was) automatically appointed in virtually all custody proceedings and that Ross would be (and was) the only GAL in the county." (Doc. No. 1, at 15-16.) It is true that a policymaker's knowledge of a municipal practice may make it a custom. Mulholland v. Government County of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013). Here, however, plaintiff provides no evidence that city officials had knowledge of the allegedly unconstitutional practices committed by the *guardian ad litem*. Plaintiff merely states, "[i]n order to foster her activities and

17

the related actions of the court, the County provided (and provides) office space, a staff, and equipment to Ross. The County must also know the money that Ross is generating from her GAL-related activities." (Doc. No. 1, at 16.) While it may be true that Lackawanna County pays for the *guardian ad litem* system, this does not establish knowledge of unconstitutional practices on the part of policy makers. If the court determined that funding of a government body always established knowledge of an unconstitutional practice and therefore custom, *Monell* would be rendered obsolete. Therefore, plaintiff has failed to establish a policy or custom sufficient to allege municipal liability. Because it is possible that this error may be corrected, the court will grant plaintiff one opportunity to amend his complaint.

**D. SUBSTANTIVE CLAIMS**

**1.) Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment requires that all similarly situated individuals be treated the same under similar circumstances. Poindexter v. Carroll, 11-CV-667, 2013 WL 2351360, *17 (M.D.Pa. 2013). There are two kinds of equal protection claims, the class-of-one theory and the traditional theory. Id. To establish a prima facie case under the traditional theory, a plaintiff must allege "that (1) he or she is a

member of a protected class and (2) the government treated similarly situated individuals outside of the protected class differently." Id. Under the class-of-one theory, a party must show "(1) the defendants treated him differently from others similarly situated; (2) the defendants did so intentionally; and, (3) there was no rational basis for the difference in treatment." Id.

In this case, plaintiff has failed to provide any facts that establish a prima facie case under either theory. As for the traditional theory, plaintiff has failed to identify himself as a member of a protected class or, for that matter, any class at all, protected or unprotected. Second, as for the class-of-one theory, plaintiff has failed to establish he was treated differently from other similarly situated individuals. Furthermore, no allegations indicate that plaintiff was intentionally treated differently than plaintiff or that there was no rational basis for any difference in treatment. Plaintiff has therefore failed to state an equal protection claim upon which relief can be granted. Because it is possible that this error may be corrected, the court will grant plaintiff one opportunity to amend his complaint.

**2.) Guardian Ad Litem**

Plaintiff next claims "[d]efendants' above-described conduct violated the requirements of Pennsylvania law regarding when a *guardian ad litem* may be

19

appointed by a court in custody disputes." (Doc. No. 1.) While plaintiff argues that defendants violated state law concerning the appointment of a *guardian ad litem*, he fails to point out which law was violated or how it was violated. Because it is possible that this error may be corrected, the court will grant plaintiff one opportunity to amend his complaint.

**E. CASE TRANSFER**

Finally, in light of all the alleged constitutional violations that plaintiff has alleged in the complaint, he asks this court to remove the case to Wayne County "for a speedy disposition free from bias." (Doc. No. 1, at 21.) This court does not have the power to transfer because it does not have jurisdiction over plaintiff's state case. Therefore, his request for transfer will be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: June 18, 2013**
O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-2504-01.wpd